IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **AMERIS BANK** | : | |
| | : | |
| Plaintiff, | : | |
| | : | **CIVIL ACTION FILE** |
| vs. | : | **NO.** _____ |
| | : | |
| **BFS CARRIERS LLC,** | : | |
| **BFS LOGISTICS, LLC, NEAL WHATLEY,** | : | |
| **AND THOMAS SUTTER,** | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

COMES NOW Ameris Bank (hereinafter "Plaintiff" or "Ameris"), Plaintiff in the above-captioned action and files this its *Complaint* (hereinafter "Complaint") and in support thereof shows the following:

### I.   ALLEGATIONS RELATED TO JURISDICTION AND VENUE

1.

Ameris Bank ("**Ameris Bank**") is a banking corporation chartered and incorporated under the laws of the State of Georgia, having its principal place of business at 3490 Piedmont Road, NW, Suite 1550, Atlanta, Georgia.  Ameris Bank is registered to do business in Alabama.

2.

BFS Carriers, LLC ("**BFS Carriers**") is an Alabama limited liability company organized and existing pursuant to the laws of Alabama.

3.

BFS Carriers' registered agent is Neal G. Whatley ("**Whatley**"), and its registered office is located at 4204 Selma Highway, Montgomery, Alabama 36108.

4.

Upon information and belief, BFS Carriers' principal place of business is located at 8132 Old Federal Road, Montgomery, Alabama, 36117.

5.

BFS Carriers is subject to the jurisdiction and venue of this Court.

6.

BFS Logistics, LLC ("**BFS Logistics**") is an Alabama limited liability company organized and existing pursuant to the laws of Alabama.

7.

BFS Logistics' registered agent is Neal G. Whatley ("**Whatley**"), and its registered office is located at 8132 Old Federal Road, Montgomery, Alabama 36117.

8.

Upon information and belief, BFS Logistics' principal place of business is located at 8132 Old Federal Road, Montgomery, Alabama, 36117.

9.

BFS Logistics is subject to the jurisdiction and venue of this Court.

10.

Upon information and belief, Whatley is an individual domiciled in and a citizen of the State of Alabama, and who maintains a residence in or about Montgomery, Alabama. In addition, Whatley has purposefully availed himself of the privilege of conducting activities within Alabama and has established continuous and systematic and/or substantial contacts with Alabama, including, but not limited to, guaranteeing the obligations of BFS Carriers, an Alabama entity, and being a member of and acting as the registered agent for BFS Carriers and BFS Logistics, another Alabama entity.

11.

Whatley is subject to the jurisdiction and venue of this Court.

12.

Thomas Sutter ("**Sutter**") is an individual domiciled in and a citizen of the State of Alabama, and who maintains a residence at in or about Montgomery, Alabama. In addition, Sutter has purposefully availed himself of the privilege of conducting activities within Alabama and has

established continuous and systematic and/or substantial contacts with Alabama, including, but not limited to, being a member of and guaranteeing the obligations of BFS Carriers, an Alabama entity.

13.

Sutter is subject to the jurisdiction and venue of this Court.

14.

As reflected above, a complete diversity of citizenship exists between the Plaintiff and all Defendants.

15.

As more fully described below, Ameris seeks damages in excess of $75,000.00, exclusive of interest and costs.

16.

Pursuant to 28 U.S.C. § 1332, this Court maintains subject matter jurisdiction over this case.

17.

Pursuant to 28 U.S.C. § 1391(b), this Court is the proper venue for this civil action to be brought.

## II. ALLEGATIONS RELATED TO THE AGREEMENT

18.

Paragraphs 1 through 17 are hereby incorporated as if fully restated herein.

19.

On or about October 2, 2023, BFS Carriers entered into and executed a certain *Equipment Financing Agreement* ("**EFA**") in favor of Ameris for the purpose of Ameris providing BFS Carriers financing for the purchase a LoadMaster® / PowerBroker® version 23.1 and DocumentPower™ version 22 Product License.

20.

Pursuant to the EFA, BFS Carriers agreed to repay Balboa in sixty (60) equal monthly payments of $2,180.63 each, beginning on November 30, 2023.

21.

A true and correct copy of the EFA is attached hereto as Exhibit 1.

22.

On or about October 2, 2023, Whatley entered into and executed a certain *Guaranty* in favor of Ameris, guarantying the payment and performance of all obligations of BFS Carriers due to Ameris under the EFA and all other obligations existing or thereafter arising ("**Whatley Guaranty**").

23.

A true and correct copy of the Whatley Guaranty is contained on Page 1 of the EFA.

24.

On or about October 2, 2023, Sutter entered into and executed a certain *Guaranty* in favor of Ameris, guarantying the payment and performance of all obligations of BFS Carriers due to Ameris under the EFA and all other obligations existing or thereafter arising ("**Sutter Guaranty**").

25.

A true and correct copy of the Sutter Guaranty is contained on Page 1 of the EFA.

26.

On or about October 2, 2023, BFS Logistics entered into and executed a certain *Guaranty of Equipment Finance Agreement, Equipment Finance Agreement Number 479952-000* in favor of Ameris, guarantying the payment and performance of all obligations of BFS Carriers due to Ameris under the EFA and all other obligations existing or thereafter arising ("**BFS Logistics Guaranty**").

27.

A true and correct copy of the BFS Logistics Guaranty is attached hereto as Exhibit 2.

28.

As of January 26, 2026, Defendants were indebted to Ameris in the aggregate amount of $76,394.61, plus interest accruing thereafter at the rate of 18% per annum, or $37.16 per day, arising from their breach of the EFA, the Whatley Guaranty, the Sutter Guaranty, and the BFS Logistics Guaranty (hereinafter, the Whatley Guaranty, the Sutter Guaranty and the BFS Guaranty may be collectively referred to as the "**Guaranties**").

### III.   COUNT I – BREACH OF EFA

29.

Paragraphs 1 through 28 are incorporated as if fully restated herein.

30.

BFS Carriers defaulted in the terms of the EFA by failing to make any payment which became due on or after October 30, 2025.

31.

Whatley has defaulted upon the Whatley Guaranty by failing to make any payment which became due on or after October 30, 2025.

32.

Sutter has defaulted upon the Sutter Guaranty by failing to make any payment which became due on or after October 30, 2025.

33.

BFS Logistics has defaulted upon the BFS Logistics Guaranty by failing to make any payment which became due on or after October 30, 2025.

34.

Pursuant to the EFA, a failure to make a payment when it becomes due is an event of default.

35.

Pursuant to the EFA,

Upon your default, [Ameris] may do any or all of the following: (a) terminate this Agreement; (b) take possession of the Collateral; you irrevocably waive any security required of us in the event we take possession of the Collateral and require you to deliver it to us at your expense to a location designated by us; (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us; (d) sell, dispose of, hold, or lease the Collateral; (e) Creditor may sue for and recover from Debtor the sum of: (1) all unpaid Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (f) exercise any other right or remedy which may be available to us under applicable law. You shall reimburse us for all costs we incur in enforcing our rights including our attorney's fees and costs of repossession, repair, storage and remarketing of the Collateral.

36.

On December 29, 2025, Ameris exercised its right to accelerate the maturity date and declared all obligations arising pursuant to the EFA immediately due and payable as provided in the EFA.

37.

As of December 29, 2025, BFS Carrier was past due in the payments due Ameris pursuant to EFA in an amount totaling $2,180.63.

38.

On December 29, 2025, the present value of the remaining thirty-five (35) future payments discounted at three percent (3.00%) yields an amount equal to $73,173.47.

39.

As of December 29, 2025, the outstanding balance of the sum of past due payments and the present value of the remaining outstanding payments totaled an amount equal to $75,354.10.

40.

Beginning on December 29, 2025, and continuing thereafter, interest began accruing on the outstanding balance at the rate of 18% per annum or $37.16 per diem.

41.

Between December 29, 2025, and January 26, 2026, interest had accrued on EFA in the total amount of $1,040.51.

42.

After January 26, 2026, interest continues to accrue on the outstanding balance at the rate of 18% per annum or $37.16 per diem.

43.

As a result of BFS Carriers' breach of the EFA, as of January 26, 2026, Ameris has been damaged in the amount of $76,394.61, comprising of principal of $75,354.10 and accrued interest of $1,040.51, plus interest accruing after January 26, 2026, at the per diem rate of $37.16.

44.

As a result of Whatley's breach of the Whatley Guaranty, as of January 26, 2026, Ameris has been damaged in the amount of $76,394.61, comprising of principal of $75,354.10 and accrued interest of $1,040.51, plus interest accruing after January 26, 2026, at the per diem rate of $37.16.

45.

As a result of Sutter's breach of the Sutter Guaranty, as of January 26, 2026, Ameris has been damaged in the amount of $76,394.61, comprising of principal of $75,354.10 and accrued interest of $1,040.51, plus interest accruing after January 26, 2026, at the per diem rate of $37.16.

46.

As a result of BFS Logistics' breach of the BFS Logistics Guaranty, as of January 26, 2026, Ameris has been damaged in the amount of $76,394.61, comprising of principal of $75,354.10 and

accrued interest of $1,040.51, plus interest accruing after January 26, 2026, at the per diem rate of $37.16.

47.

As a proximate result of BFS Carriers' breach of the EFA, Whatley's breach of the Whately Guaranty, Sutter's breach of the Sutter Guaranty, and BFS Logistics' breach of the BFS Logistics Guaranty, BFS Carriers, Whatley, Sutter, and BFS Logistics are jointly and severally liable to Ameris for an amount (calculated as of January 26, 2026) equal to $76,394.61, plus interest accruing after January 26, 2026, at the per diem rate of $37.16.

### IV.    COUNT III - ATTORNEY'S FEES

48.

Paragraphs 1 through 47 of this Complaint are hereby incorporated as if fully restated herein.

49.

The EFA and the Guaranties provide that Ameris is entitled to recover reasonable attorney's fees in the collection of outstanding amounts due Ameris.

50.

As a consequence of the Defendants' default under the terms of the EFA and the Guaranties, Ameris is entitled to recover from Defendants, jointly and severally, its reasonable expenses of collection, including, but not limited to, attorneys' fees, court costs, and other legal expenses.

WHEREFORE, Ameris prays the following:

(i) That Summons issue and Defendants be served with a copy of the Complaint and that Defendants be required to appear and answer as required by law;

(ii) With respect to Count I of this Complaint, the Court enters judgment in favor of Ameris and against Defendants, jointly and severally, in the amount of the balance owing on the EFA and the Guaranties, which as of January 26, 2026, was

$76,394.61, plus interest accruing after January 26, 2026, at the per diem rate of $37.16;

(iii) With respect to Count III of this Complaint, the Court enters judgment in favor Ameris and against Defendants, jointly and severally, in an amount equal to Ameris's reasonable expenses of collection, including, but not limited to, attorneys' fees, court costs, and other legal expenses;

(iv) The Court enters judgment awarding Ameris all costs incurred in this action;

(v) Interest accrues on the judgment amount; and

(vi) That Ameris have such other and further relief as this Court may deem equitable and just.

RESPECTFULLY SUBMITTED this 26th day of January, 2026.

**MOORE, CLARKE, DuVALL & RODGERS, P.C.**

*/s/ Stephan A. Ray*
**STEPHAN A. RAY**
Alabama Bar Number: 7664-X39X
*Attorneys for Ameris Bank*
2829 Old Dawson Road
Albany, Georgia 31707
Telephone:   229-888-3338
Facsimile:   229-888-1191
Email:   sray@mcdr-law.com

# Exhibit "1"



# EQUIPMENT FINANCING AGREEMENT ("Agreement")

Agreement # 479952-000

## DEBTOR INFORMATION

**Debtor Name:** ("you" or "your") BFS Carriers LLC

**Debtor Address:** Montgomery, AL 36117

**Collateral Location:** (If different from Debtor Address) Montgomery, AL 36108

**Debtor Phone #:**

**Federal Tax ID #:** 1406

## PAYMENT AND TERMS

**Full Description of Collateral (Include Make Model, Serial Numbers)**
See Invoices attached hereto as exhibit A1 and incorporated herein by this reference.

**Collateral Cost:** $106,913.40

**Initial Payment Date:** 11/30/2023

**Term:** 60 (Plus any Prefund or Per diem Period)

**Monthly Payment Schedule:** 60 @ $2,180.63

**Initial Payment** (Debtor requests that this amount be electronically debited)

**Fee $:** $400.00

**Total Amount Due:** $400.00

By signing below Debtor hereby irrevocably accepts the Collateral under this Agreement and irrevocably authorizes Creditor to pay the supplier on behalf of the Debtor. The person executing this Agreement is authorized to do so, making this Agreement the valid and binding act of the Debtor. DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.

**Debtor:** BFS Carriers LLC

**By:** *Neal Whatley* (eSigned By: Oct 02, 2023 6:55:18 AM PDT)

**Name and Title:** Neal Whatley    Member

**Date:** 10/02/2023

**Creditor:** Ameris Bank dba Balboa Capital

**By:** *Cynthia Gerken* (eSigned By: Oct 02, 2023 2:49:56 PM PDT)

**Title:** Vice President

**Date:** 10/02/2023

**GUARANTY:** You (jointly and severally if more than one) unconditionally guarantee to us and our assigns the payment and performance when due of all of the obligations of the Debtor under the Agreement and all related documents executed by the Debtor. You acknowledge that you have read and understood the Agreement and this Guaranty. You agree that you have an interest in the Debtor, economic or otherwise, and that we would not enter into this Agreement without this Guaranty. We may proceed against you before proceeding against the Debtor, the Collateral or enforce any other remedy. Notwithstanding any changes made to the Agreement in our dealings with Debtor, this Guaranty will remain in effect as changed even if you are not notified of the changes and will remain in effect even if the Agreements are no longer enforceable against the Debtor. You waive all notices to which you may have a right. You agree to pay us all our expenses in enforcing this Guaranty. You may not assign this Guaranty without our written consent. The governing law, jurisdiction and venue provisions of the Agreement shall apply to any action to enforce this Guaranty. You consent to our conducting a credit evaluation of you from all sources, periodically reporting and updating it and sharing the results with others. You agree that we may obtain any information from credit reporting agencies we deem necessary to enforce this Guaranty.

**Guarantor's Signature:** *Neal Whatley* (eSigned By: Oct 02, 2023 6:55:18 AM PDT)   **Name:** Neal Whatley   **Date:** 10/02/2023

**Guarantor's Signature:** *Thomas Sutter* (eSigned By: Oct 02, 2023 11:04:11 AM PDT)   **Name:** Thomas Sutter   **Date:** 10/02/2023

**AUTHORIZATION FOR ACH PAYMENTS:** Payment of the Obligations, the Initial Payment/Total Amount Due, the amounts described in the Fees and Taxes section, and any other amounts owed under this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this paragraph, or the account from which the Debtor paid any deposit or fee in conjunction with the execution of this Agreement, or any account from which Debtor paid any obligation under this Agreement, or the account from which a cancelled or voided check provided by the Debtor can be drawn, for the payment of all amounts owed by Debtor from time to time under this Agreement. Debtor initiates each transaction and authorizes Creditor to debit from any of the foregoing accounts the Obligations, the Initial Payment/Total Amount Due, amounts described in the Fees and Taxes section, and any other amounts owed under this Agreement and agrees that Creditor, or its assignees, has the right, but not the obligation, to do so. Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is also authorized to debit any of the foregoing accounts outlined above. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable. Any incorrect charge will be corrected upon notification to Creditor, by either a credit or debit to Debtor's account.

**Bank Name:** First Horizon   **Bank City, State:** Birmingham, AL

**ABA Routing No:**    **Account No.:** 9609

**Business Name on Account:** BFS Carriers

**Street Address on Account:**    **City, State on Account:** Montgomery, AL

**Authorized Signature:** *Neal Whatley* (eSigned By: Oct 02, 2023 6:55:18 AM PDT)   **Name and Title:** Neal Whatley   Member


1 of 3

EFASP1296I

The original document is owned by Balboa Capital Corporation and this copy was created on Oct 02, 2023 02:49:18 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

# TERMS OF EQUIPMENT FINANCING AGREEMENT ("Agreement")

**Agreement.  Ameris Bank dba** Balboa Capital, ("Creditor", "we", "us", or "our") agrees to lend to Debtor and you agree to borrow from us an amount for the financing of the Collateral.

**Commencement Date.**  Upon verification of the delivery of the Collateral in a form acceptable to us ("Commencement Date"), you hereby authorize us to disburse the Collateral Cost as indicated on the supplier's invoice.

**Payments; Per Diem Expense Reimbursement.** Amounts received by us under this Agreement will be applied at our discretion to any amount outstanding. Debtor shall repay Creditor the above Monthly Payments in the number of monthly installments indicated above, plus the Per Diem Expense reimbursement as described in this paragraph. The initial Monthly Payment shall be deemed due as of the date indicated above and subsequent Monthly Payments shall be due on the same day of each month thereafter until paid. The first payment we will charge you shall be a pro rata portion of the Monthly Payment based on a daily charge of one-thirtieth (1/30th) or .033333% of the Monthly Payment calculated from the number of days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor.  Debtor acknowledges that: a) Creditor may charge up to thirty (30) days of Per Diem; and b) **the Per Diem is not credited against the Monthly Payments and is in addition to the Term indicated above.** All Monthly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's receipt of Creditor's invoice. Advance payments may be applied to the Obligations at Creditor's discretion. In the event Debtor signs this Agreement, but the Agreement is not effected or signed by Creditor, the advanced payments, documentation fee and security deposit may be retained by Creditor so as to compensate Creditor for its processing costs, labor, and other expenses.

**Grant of Security Interest.** You hereby grant to us a security interest in the Collateral and all proceeds to secure all of your obligations under this Agreement.

**Disclaimer of Warranties and Claims; No Agency.** We make no representation or warranty, express or implied, regarding any matter whatsoever including the merchantability or fitness for a particular purpose of the Collateral. This Agreement is irrevocable. **_Your obligation to pay all amounts payable hereunder is non-cancellable, absolute, and unconditional_** and will not be subject to any reduction, setoff, defense, counterclaim, deferment or recoupment for any reason, **even if the Collateral is damaged, destroyed or defective**. You acknowledge you selected the Collateral and the supplier and your supplier is not our agent nor are we their agent. You understand and agree that we are independent and separate from supplier. You acknowledge that no one, including the supplier, has been authorized to waive or change any term or condition of this Agreement. No representation by the supplier as to any matter shall bind us or affect your duty to pay all amounts and perform all obligations hereunder.  You will use the Collateral for commercial purposes only, in compliance with the law and not for any personal, family or household use.

**Collateral.** You will not modify or change location of the Collateral without our proper written consent and allow us to inspect it upon our request. At your expense you will maintain the Collateral in good operation condition and repair. You will keep the Collateral free and clear from all liens and encumbrances. Titled Collateral will be titled and/or registered as we direct. You are responsible for any damage or destruction of the Collateral. You will at our election repair the Collateral at your expense or pay to us all amounts then due and owing plus the total of all unpaid Payments for the Term discounted at 3%. You will indemnify and hold us, our member, managers and employees harmless from and against any claims, costs, expenses, damages and liabilities, in any way relating to the Collateral.

**Fees and Taxes.** You agree to pay when due and to hold us harmless from all taxes, interest and penalties relating to this Agreement and the Collateral ("Taxes") and reimburse us for those Taxes we pay on your behalf.  If we pay any of the above for you, you agree to reimburse us and to pay us a processing fee for each payment we make on your behalf. In addition, you also agree to pay us any filing fees prescribed by the Uniform Commercial Code or other law and reimburse us for all costs and expenses involved in documenting and servicing this transaction. You further agree to pay us a loan fee on or before the date the first payment is due and a termination fee. You also acknowledge that in addition to the other obligations due under this Agreement, we may assess and you may be required to pay additional taxes and/or fees, including an invoice fee.  Such fees may not only cover our costs they may also include a profit.  You will indemnify us against the loss of any tax benefits arising out of your acts or omissions.

**Insurance.** During the Term you will maintain insurance we specify on the Collateral. If you do not provide us satisfactory proof of insurance we may, but are not required, to buy such insurance for our benefit and add charges which any result in a higher premium you would pay if you obtained insurance, plus an interest charge. At our option, in lieu of obtaining or continuing insurance, we may require you to pay a monthly additional fee up to 2% of the cost of the Collateral. This fee is not calculated with reference to additional risk nor constitutes additional profit for us, but represents the basis on which we are willing to forbear from exercising remedies and continue this Agreement without the required insurance. You will receive no insurance coverage and will not be released from any obligation under this Agreement. We are not selling insurance. We will cease charging the additional fee or billing for insurance 30 days after you provide satisfactory proof of insurance.

Inits

**Initial:** *nw*

The original document is owned by Balboa Capital Corporation and this copy was created on Oct 02, 2023 02:49:18 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 2:26-cv-00059    Document 1    Filed 01/26/26    Page 13 of 17

**Default and Remedies.** If any one of the following occurs, you will be in default: (i) you fail to pay any amount under this Agreement when due; (ii) you cease doing business, admit your inability to pay your debts, or you file or have filed against you a petition under the Bankruptcy Code; (iii) you breach any other obligation contained in this Agreement; or (iv) any of the above events of default occur with respect to any Guarantor. Upon your default, we may do any or all of the following: (a) terminate this Agreement; (b) take possession of the Collateral; you irrevocably waive any security required of us in the event we take possession of the Collateral and require you to deliver it to us at your expense to a location designated by us; (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us; (d) sell, dispose of, hold, or lease the Collateral; (e) Creditor may sue for and recover from Debtor the sum of: (1) all unpaid Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (f) exercise any other right or remedy which may be available to us under applicable law. You shall reimburse us for all costs we incur in enforcing our rights including our attorney's fees and costs of repossession, repair, storage and remarketing of the Collateral. A waiver of default will not be a waiver of any other subsequent default.

**General.** This Agreement **will be governed and construed under the laws of the State of California** without reference to its principle of conflicts of laws and is deemed to have been made and performed in Orange County, CA. **You submit to the exclusive and mandatory jurisdiction of CA** and agree that the CA state courts and/or the United States District Court for the Central District of California, Santa Ana Division, will have exclusive and mandatory jurisdiction over any action or proceeding to enforce this Agreement or any action or proceeding arising out of this Agreement. <u>**We may at our sole discretion commence any action seeking judicial intervention to recover the Collateral in any State Court where the Collateral may be physically located.**</u> You waive any objection based on improper venue and/or forum non-conveniens. You irrevocably grant us the right to make such filings under the Uniform Commercial Code as we deem necessary. You agree to pay us interest on all past due amounts at the lower of 1.5% per month or the highest rate allowed by law. You will not assign your rights under this Agreement, or permit the Collateral to be used by anyone other than you. We may assign this Agreement, in whole or in part, without notice to you or without your consent. You agree that our assignee will have the same rights and benefits that we have now, but will not be subject to any claims, defenses or set offs that you may have against us. **This Agreement constitutes the entire agreement between the parties, and supersede all prior negotiations, written or oral, including any written offer or proposal describing and/or summarizing the terms of any proposed lease/financing. This Agreement cannot be modified except in writing signed by the party against whom enforcement is sought. Debtor represents to Creditor that it shall not allege in any court proceeding that the parties entered into an oral modification of this Agreement, and further agrees, that in any event, any such oral modification shall not be enforceable unless it is reduced to a writing signed by the party against whom enforcement is sought.** You represent and warrant to us that all information conveyed to us in connection with this Agreement and all related documents whether by you, a guarantor, a supplier or any other person, is true, accurate, complete and not misleading. This Agreement may be executed in separate counterparts which together shall be the same instrument. You agree this Agreement may be signed electronically pursuant to the Electronic Signatures in Global and National Commerce Act and other applicable law. All fees may not only cover our costs but may include a profit. You may not repay this Agreement without our prior written consent. If Debtor constitutes more than one person, the liability of each shall be joint and several. Delivery of this Agreement bearing a facsimile signature, electronic signature, or other signature which is not in ink, shall have the same force and effect as if this document bore an original ink signature. The electronic transmission of this Agreement shall have the same force and effect as delivery of an original and shall be legally admissible under the best or original evidence rule. Any notice given hereunder shall be in writing and deemed given two business days after being deposited with the US Postal Service, first class postage prepaid, and addressed to the Debtor at its address set for above or to Creditor at 575 Anton Blvd., 12th Floor, Costa Mesa, CA 92626, or such other address given to the sender by written notice.

Initial: *nw* (Inits)

The original document is owned by Balboa Capital Corporation and this copy was created on Oct 02, 2023 02:49:18 PM.



# Customer Invoice
# #INV597357

Department #3500
P.O. Box 830539
Birmingham AL 35283
United States

10/2/2023

**Bill To**
BFS Carriers LLC

Montgomery AL 36108
United States

**Ship To**
BFS Carriers LLC

Montgomery AL 36108
United States

**Total**

**$106,913.40**

Due Date: **10/2/2023**

**PLEASE RETURN THIS PORTION OF INVOICE WITH YOUR REMITTANCE**

| Customer Grp/No. | Customer Name | Terms | PO # | Memo |
|---|---|---|---|---|
| SKEK | BFS Carriers LLC | | Contract | Contract payment 1 of 1 |

| Item | Total |
|---|---|
| LoadMaster® / PowerBroker® version 23.1 & DocumentPower™ version 22 Product License Fees | $106,913.40 |

| | | |
|---|---|---|
| | Subtotal | $99,917.99 |
| | Tax Total | $6,995.41 |
| | Total | $106,913.40 |

**For Payment by Check:**
McLeod Software
Department 3500
P.O. Box 830539
Birmingham, AL 35283

**For Payment by ACH or Wire:**
Beneficiary Bank: First Horizon
Beneficiary: Tom McLeod Software (McLeod Software)
Routing/Transit #:
Account #:               8597

## Addendum "B"

To **BFS Carriers LLC**

Equipment Finance Agreement No. **479952-000**

Reference is made to the above-referenced Equipment Finance Agreement ("Agreement") dated 10/02/2023 by and between BFS Carriers LLC as Debtor, and AMERIS BANK d/b/a BALBOA CAPITAL as Creditor.

Provided that no event of default now exists or has ever existed, Debtor may prepay its obligations under the Agreement in full, but not in part, in advance of the contractually scheduled end of term.

The early payoff shall be calculated as follows:

1. Payment in full of the current net investment as calculated by Creditor, plus all accrued and unpaid late charges and/or fees and/or taxes, and/or other amounts due under this Agreement ("Prepayment Amount"). Plus,

2. (x) 1% of the current net investment as of the payoff date, as an early termination fee ("Prepayment Fee"), multiplied by (y) the number of full twelve-month periods remaining.

Debtor and Creditor acknowledge and agree that the Prepayment Fee is a reasonable estimate of the actual or anticipated harm sustained by Creditor for Debtor's early payoff. For purposes of calculating the Prepayment Amount and Prepayment Fee, any unearned interest that would accrue after the payoff date shall be excluded from the calculation of the net investment amount as of the payoff date. Debtor will not receive any rebate or credit for interest relating to any period prior to the payoff date.

In all other respects, the terms and conditions of the Agreement, as originally set forth, shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto, by their authorized signatories, have executed this Addendum "B" as of the date set forth below their respective signatures.

Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature.

**In the event of an error or omission in the calculation of the Prepayment Amount or the Prepayment Fee, Creditor reserves the right to re-calculate the payoff and bill and collect for any difference.**

**Creditor:**
**Ameris Bank d/b/a Balboa Capital**

By: *Cynthia Gerken* (eSigned By: Oct 02, 2023 2:49:17 PM PDT)
Vice President

Date: 10/02/2023

**Debtor:**
**BFS Carriers LLC**

By: *Neal Whatley* (eSigned By: Oct 02, 2023 12:13:14 PM PDT)
Name: Neal Whatley
Title: Member

Date: 10/02/2023

1272C



# Exhibit "2"



# GUARANTY OF EQUIPMENT FINANCE AGREEMENT

**Equipment Finance Agreement Number** 479952-000

In consideration of the making of the above Equipment Finance Agreement by the Creditor, AMERIS BANK d/b/a BALBOA CAPITAL, with the Debtor BFS Carriers LLC (the "Company") at the request of the undersigned and in reliance on this guaranty, the undersigned (if more than one, then jointly and severally) as a direct and primary obligation, guarantees to the Creditor and any assignee of the Creditor (either of whom are hereinafter called "holder") the prompt payment of all rent to be paid by the Debtor and the performance by the Debtor of all the terms, conditions, covenants and agreements of the Equipment Finance Agreement, irrespective of any invalidity or unenforceability thereof or the security thereof. The undersigned promises to pay all expenses, including attorney's fees incurred by or in enforcing all obligations of the Debtor under the Equipment Finance Agreement or incurred by the holder in connection with enforcing this guaranty. The undersigned waive notice of acceptance hereof, presentment, demand, protest, notice of protest or of any defaults and consents that the holder may, without affecting the obligation hereunder, grant the Debtor any extension of indulgence under the Equipment Finance Agreement, and may proceed directly against the undersigned without first proceeding against Debtor or liquidating or otherwise disposing of any security afforded holder under the Equipment Finance Agreement. Accounts settled or stated between holder and Debtor shall bind the undersigned. This guaranty shall be construed in accordance with the laws of the State of California and the undersigned consents to the jurisdiction of the courts situated in the County of Orange, State of California. The undersigned waive trial by jury.

This guaranty shall bind the respective heirs, executors, administrators, successors, and assigns of the undersigned.

WITNESS OUR HANDS AND SEAL THIS ON 10/02/2023.

**Company Guarantor** BFS LOGISTICS, LLC

**sign** →

By: *Neal Whatley* (eSigned By:) Oct 02, 2023 6:56:15 AM PDT
Name: Neal Whatley
Title: Member
(Have signed by an Officer / Member of the Company)

## Company Resolution

I _____, the duly elected and qualified _____ of BFS LOGISTICS, LLC _____ (the "Company"), hereby certify that Company's exact legal name, state of incorporation/organization, location of its chief executive office and/or its place of residence, as applicable, have been correctly identified to Creditor, and that at a duly constituted meeting of the Board of Directors/Officers/Members/Partners of the Company, the Board resolved that, Neal Whatley _____ in his/her capacity as Member _____ is authorized for, on behalf of and in the name of this Company, to negotiate, procure and execute such Equipment Finance Agreement and any other documents in connection with same, which in his/her opinion are necessary or advisable to effectuate the most favorable interests of the Company, and the execution of such documents by said officer shall be conclusive evidence of his/her approval thereof.

Legal Name of Company BFS LOGISTICS, LLC

**sign** →

Signature _____
Name: _____
Title: _____
Date: _____

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

EFA315C



The original document is owned by Balboa Capital Corporation and this copy was created on Oct 02, 2023 02:49:19 PM.